FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 28, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| YAKIMA VALLEY COMMUNITY FOUNDATION, et al., | 1:15-cv-003052-SAB |
| Plaintiff, | |
| v. | **ORDER RE MOTIONS FOR SUMMARY JUDGMENT** |
| SYLVIA M. BURWELL, in her official capacity as Secretary, United States Department of Health and Human Services, | |
| Defendant. | |

Before the Court is Plaintiffs' Motion for Summary Judgment, ECF No. 16, Defendant's Cross-Motion for Summary Judgment, ECF No. 23, and Defendant's Motion to Strike Selected Exhibits. ECF No. 29. An in-person hearing was held on March 2, 2016 in Yakima, Washington. Plaintiffs were represented by Michael F. Madden. Defendant was represented by W. Charles Bailey, Jr. and Pamela J. DeRusha. The Court took the motions under advisement.

### *Facts and Procedural Background*

Medicare reimburses "teaching hospitals" for some of the costs incurred from operating approved residency programs for physicians. *See* 42 U.S.C. §

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**# 1

1395ww(h). Reimbursement levels were set in 1985 as "approved per resident amounts" ("APRA"). APRAs were set based on training costs from a hospital's "base year" which was 1984. For hospitals that did not operate a residency program before 1985, Congress specified the base year APRA would be established "based on approved [full-time equivalency] amounts for comparable programs." The Secretary issued a rule implementing the instructions in 1989. The regulation provided:

> The per resident amount is based on the lower of the following:
> (a)  The hospital's actual costs…;
> (b)  The mean value of per resident amounts of hospitals located in the same geographic wage area, as the term is used in the prospective payment system under Part 412 of this chapter [governing inpatient prospective payment system payments], for cost reporting periods beginning in the same fiscal years.

42 C.F.R. § 413.86(e)(4)(i).

The regulation also provided, "[i]f there are fewer than three amounts that can be used to calculate the mean value [in the same geographic wage area], the intermediary must contact the HCFA Central Office for a determination of the appropriate amount to use." *Id*. The Secretary did not explicitly promulgate a rule to address these cases but did adopt a policy known as the Sequential Geography Methodology ["SGM"]. The SGM provides:

> If there are less than three teaching hospitals in the same geographic wage area, we include all hospitals in contiguous wage areas. If we continue to have fewer than three hospitals for this calculation, we use the statewide average . . . [where] there are fewer than three hospitals with teaching programs in the entire state[,] we calculate a weighted average among all hospitals with teaching programs in contiguous states.

This policy applied until a new methodology superseded it, by rule, in 1997.

The Plaintiff-Hospitals began operating approved single specialty family medicine residency programs between fiscal years 1995 and 1998. They operate in relatively rural areas. The base year APRA for each was set using the SGM which

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** # 2

resulted in comparators that were much larger and urban than Plaintiff-Hospitals. Plaintiffs complain that because the comparators were large, mature, multi-specialty programs their costs of operation were much lower than the costs of the then-start up single-specialty rural programs. Because the base year APRA is only adjusted for inflation, the SGM affected all subsequent years as well.

Essentially, Congress passed a law giving the Secretary authority to set ARPA standards based on comparators. The Secretary promulgated a regulation that set such standards. The regulation, however, did not cover every hospital depending on the number of hospitals in a geographical area. To cover these geographically remote hospitals, the Secretary adopted a policy—not a rule—known as SGM.

The hospitals appealed their APRAs to the Provider Reimbursement Review Board ("Board") which determined it lacked jurisdiction to overturn the SGM. The Board also granted expedited judicial review as permitted by statute. In 2003, the hospitals brought suit in the Eastern District of Washington. 2:03-cv-03096-FVS. The court held: 1) the SGM relied on factors inconsistent with the Secretary's contemporaneous interpretation of the governing statute; 2) the SGM based each hospital's APRA on dissimilar residency programs located outside each hospital's Medicare geographic area; and 3) the APRAs set using the SGM bore no relationship to the hospital's actual Medicare-allowed costs. The Court remanded the matter to the Secretary to identify comparable programs based on criteria set by the Court. The Secretary was unable to identify any comparable programs and the Court determined the APRAs should be based on the hospitals' own weighted Medicare-approved base year costs. The district court's ruling was appealed to the Ninth Circuit which held the initial expedited judicial review was inappropriate and the district court lacked jurisdiction because the Board retained the ability to overturn the judicial decision. The Board retained that ability because the SGM was an ad hoc policy that lacked the force of law—in other words, the Board was

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**# 3

not bound by the SGM. The matter was sent back down to the Board which determined application of the SGM was appropriate. The hospitals challenge this decision.

### *Standard of Review*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325.

In addition to showing that there are no questions of material fact, the moving party must show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000).  The moving party is entitled to judgment as a matter of law if the non-moving party has failed to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

This Court has jurisdiction to review the Secretary's action pursuant to 42 U.S.C. § 1395oo(f)(1), which incorporates the review standards from the

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** # 4

Administrative Procedure Act. Under the APA, a court shall set aside any agency action found to be

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence . . .; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

### *Analysis*

The dispositive questions in this case are: 1) what level of deference does a reviewing court assign to the Secretary's SGM policy; and 2) employing the applicable deference, was the SGM arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Court finds the SGM is entitled to *Chevron* deference and that under either *Chevron* or *Skidmore* deference the SGM was a legitimate interpretation of the relevant statute.

Plaintiffs argue the SGM is entitled to either no deference or limited deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). The Secretary, on the other hand, argues *Chevron* deference should apply. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). An agency's interpretation of a statute is entitled to *Chevron* deference only if "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226 (2001). If *Chevron* deference does not apply, the Secretary's action would be subject only to *Skidmore* deference. *Id.* at 227.

Although the SGM was not promulgated via notice-and-comment rulemaking, it is nonetheless entitled to *Chevron* deference. The SGM, on its own, does not carry the force of law. *See Providence Yakima Med. Ctr. v. Sebelius*,

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** # 5

611 F.3d 1181, 1188 (9th Cir. 2010). However, Congress delegated authority to the Secretary to make rules carrying the force of law, 42 U.S.C. § 1395ww(h), which the Secretary did by initially promulgating the 1989 regulation setting the per-resident amounts for newly established programs. 42 C.F.R. § 413.86(e)(4)(i) (1989). Accordingly, the first prong of the *Mead* is met. *See Fournier v. Sebelius*, 718 F.3d 1110, 1119 (9th Cir. 2013). Additionally, the SGM meets the second prong of *Mead* because it was created in the exercise of the Secretary's authority to make rules carrying the force of law. Much like the interpretations at issue in *Fournier* and *Barnhart v. Walton*, 535 U.S. 212 (2002), the SGM fills the interstices of the 1989 regulation. In other words, because the 1989 regulation was an interpretation that carries the force of law and the SGM was an interpretation intended to fill the small gap in the regulation, the SGM was promulgated in the exercise of the Secretary's authority to make rules carrying the force of law. Because the SGM satisfies both prongs of *Mead*, as interpreted in *Fournier*, the policy is entitled *Chevron* deference.[1]

Having determined the applicable level of deference, the Court must analyze whether the Secretary's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. By statute, Congress instructed the Secretary set reimbursement rates "based on approved [full-time equivalency] resident amounts for comparable programs." 42 U.S.C. § 1395ww(h)(2). Congress left to the Secretary to determine what constituted a comparable program. The 1989 regulation set APRA's based on the lower of the hospital's actual costs and the average per resident amounts of hospitals located in the same geographic wage area, if there are at least three other hospitals in the area. The SGM fills the void

---

[1] Although the Court of Appeals described *Skidmore* as the appropriate level of deference for the SGM, that statement was dicta and was not part of the analysis or holding of the opinion. *See Providence Yakima Med. Ctr.v. Sebelius*, 611 F.3d at 1185. *Fournier*, which was decided after *Providence*, explicitly analyzes the pertinent question and controls here. 718 F.3d at 1119.

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** # 6

for hospitals in geographic wage areas with fewer than three teaching hospitals by expanding the area measured—first to contiguous wage areas, then to the entire state, and finally to contiguous states—until the area captures at least three teaching hospitals. Plaintiffs concede the regulation is rational citing wages as a major component of program costs and finding a "commonality of conditions that bear on the cost of operating residency programs" within a single same geographic wage area, such as capital costs, recruitment, transportation, housing, and infrastructure costs. Plaintiffs, however, argue the SGM does not find comparable programs by using adjoining wage areas as a metric. Plaintiffs seek reimbursement of actual per resident amounts, insisting its costs are unique. Under *Chevron* deference, the SGM is eminently reasonable.

Congress did not define "comparable" in § 1395ww(h)(2). Instead, Congress left it to the Secretary to determine what variables to consider in setting a hospital's base-year APRA. The Secretary promulgated a rule utilizing geographic comparability, perhaps reasoning that geographic proximity may incorporate comparable costs in many ways, such as standard wages, local or state regulatory costs, professional fees, access to recruitment pools, or other factors. The Secretary chose to average hospital costs from geographic wage areas as the ideal standard of comparability. Unfortunately, this standard did not work for remote rural hospitals, such as Plaintiffs. In order to find a sufficient number of comparable teaching hospitals for the rural hospitals, the Secretary logically decided to incrementally increase the size of the geographic area until it encompassed enough other teaching hospitals that an average could be set. While teaching hospitals within a same wage area may be more comparable than those merely within the same state or region, the Secretary decided the SGM found adequately comparable hospitals when her preferred metric could not. Not only is the SGM not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, it may have been the most rational method of determining

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**# 7

comparability for rural teaching hospitals. Indeed, the SGM would survive even under the lesser *Skidmore* deference standard, if it were applicable.

Plaintiffs are upset that their costs exceeded the APRA reimbursement levels provided by the Secretary and insist on receiving actual costs. Had Congress desired that APRAs reflect actual costs for teaching hospitals, or even just for rural teaching hospitals, it would have done so explicitly. Instead, Congress set a less precise goal for the Secretary in an attempt to contain costs. The Secretary has faithfully, if perhaps imperfectly, carried out her assignment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Strike Selected Exhibits, ECF No. 29, is **DENIED**.

2. Plaintiffs' Motion for Summary Judgment, ECF No. 16, is **DENIED**.

3. Defendant's Cross-Motion for Summary Judgment, ECF No. 23, is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, enter judgment for Defendant, provide copies to counsel and close the file.

**DATED** this 28th day of April 2016.



Stanley A. Bastian
United States District Judge

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** # 8